## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19- |
| v. | : | DATE FILED: April 30, 2019 |
| SCOTT H. KORN | : | VIOLATIONS: |
| | | 18 U.S.C. § 157(2) (bankruptcy fraud – 2 |
| | : | counts) |
| | | 18 U.S.C. § 152(1) (concealment of assets |
| | : | – 2 counts) |
| | : | 18 U.S.C. § 152(3) (false declaration – 1 |
| | | count) |
| | : | 18 U.S.C. § 152(2) (false oaths – 1 count) |
| | | 18 U.S.C. § 1623 (perjury – 1 count) |
| | | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

### BACKGROUND

#### The $2.4 million verdict

1.      Defendant SCOTT H. KORN was a businessman living in Villanova, PA.

2.      In or about December 2009, J.B. filed a lawsuit against defendant SCOTT H. KORN and several of his companies for breach of contract and other causes of action.

3.      In or about April 2014, the case proceeded to trial before a jury in the Philadelphia Court of Common Pleas.

4.      On or about April 9, 2014, the jury returned a verdict in favor of J.B. and against defendant SCOTT H. KORN and some of his companies in the amount of approximately $2.4 million.

### Defendant SCOTT H. KORN'S post-verdict transactions

5.      On or about April 12, 2014, defendant SCOTT H. KORN purchased a 2009 BMW X3 for approximately $26,085.

6.      On or about April 14, 2014, defendant SCOTT H. KORN purchased a 2014 Porsche 911 for approximately $118,176.

7.      On or about April 15, 2014, defendant SCOTT H. KORN purchased a 2014 Porsche Cayman for approximately $68,267.

8.      Defendant SCOTT H. KORN charged all three cars to his American Express Centurion Card.

9.      Defendant SCOTT H. KORN titled the BMW jointly in his name and a relative's name.   Defendant KORN titled the two Porsches jointly in his and name and his relative's name "with rights of survivorship."

10.      On or about April 17, 2014, defendant SCOTT H. KORN transferred his 2013 Cadillac Escalade to a car dealership in West Chester, PA for approximately $39,000.   His relative then purchased the Cadillac from the dealership for approximately $44,099, financing the entire purchase price of the car.

11.      On or about April 17, 2014, defendant SCOTT H. KORN purchased a cashier's check in the amount of approximately $199,937.57, withdrawing the money from

his personal checking account at Meridian Bank (account ending 5149).   Defendant KORN made the cashier's check payable to himself.

12.     On or about April 18, 2014, defendant SCOTT H. KORN cashed the cashier's check at a check casher, receiving approximately $195,938 in cash and paying a check cashing fee of approximately $4,000.

13.     On or about April 21, 2014, defendant SCOTT H. KORN filed a voluntary petition in bankruptcy under Title 11, United States Code, Chapter 11, in the United States Bankruptcy Court for the Eastern District of Pennsylvania.   *In re Scott Korn, Debtor,* Bankr. No. 14-13138.   That bankruptcy case remained pending until on or about October 27, 2016.

14.     On or about May 2, 2014, defendant SCOTT H. KORN withdrew approximately $748,247.97 from his LPL Financial Services securities account (account ending 0478).   Defendant KORN caused this money to be transferred to Meridian Bank, to make an unscheduled payment to Loan 701668 (a line of credit extended to defendant KORN for commercial purposes in 2011).   This transfer of $748,247.97 from defendant KORN's securities account at LPL Financial paid off defendant KORN's line of credit at Meridian Bank (Loan 701668).   The LPL Financial Services account (ending 0478) had a small remaining balance.

3

**Chapter 11 bankruptcy proceedings**

15.     Individuals can file for bankruptcy under Chapter 13, 11, or 7 of the U.S. Bankruptcy Code, while corporations can file for bankruptcy under Chapter 11 or 7 of the Bankruptcy Code.

16.     Chapter 11 of the Bankruptcy Code generally provides for reorganization.   An individual (the "Debtor") who files for bankruptcy under Chapter 11 usually proposes a plan of reorganization to keep his business alive and pay creditors over time.   As explained on the United States Courts' website, "Upon filing a voluntary petition for relief under Chapter 11 … the debtor automatically assumes an additional identity as a 'debtor in possession.' …   The term refers to a debtor that keeps possession and control of its assets while undergoing a reorganization under chapter 11, without the appointment of a case trustee.   A debtor will remain a debtor in possession until the debtor's plan of reorganization is confirmed, the debtor's case is dismissed or converted to chapter 7, or a chapter 11 trustee is appointed."

17.     Thus, by filing under Chapter 11, defendant SCOTT H. KORN retained control of his companies and also positioned himself to retain control of the bankruptcy, avoiding the appointment of a trustee.

18.     In a Chapter 11 bankruptcy, the debtor can propose a plan of reorganization in which future income or other assets is used to pay creditors over time. However, generally creditors are not paid 100% of what they are owed. Some creditors, such as creditors holding secured claims, may receive a greater percentage of what they are owed.

Other creditors, such as those whose claims are not secured, generally receive a lesser percentage of what they are owed, if they receive anything.

19.     Debtors who file bankruptcy petitions must also complete and file various Schedules.   These include a Schedule B, "Personal Property"; Schedule C "Property Claimed as Exempt"; Schedule D, "Creditors Holding Secured Claims"; Schedule F, "Creditors Holding Unsecured Non-Priority Claims"; and Schedule G, "Executory Contracts and Unexpired Leases."

20.     The Bankruptcy Code sets out the order in which a debtor must pay debts.   Non-priority unsecured debts are among the last to be paid, and are the least likely to be fully paid.

21.     A debtor's personal property, such as cash, cars, bank accounts, and boats, that are not exempt under the Bankruptcy Code, are part of the bankruptcy estate, and must be liquidated to satisfy creditors. That means that these assets either must be sold, or a debtor must contribute their value to the bankruptcy plan.

22.     Debtors who file a bankruptcy case must also complete a Statement of Financial Affairs.   The Statement of Financial Affairs requires a debtor to disclose financial data, including all income from any source received within the two years preceding the commencement of the bankruptcy case; payments or transfers to any creditor made within 90 days preceding the commencement of the case; and all other property transferred (other than in the ordinary course of business) either absolutely or as security within the one years immediately preceding the commencement of the bankruptcy case.

23.     Additionally, a debtor who files for bankruptcy must submit a

Declaration, under penalty of perjury, that he has read the summary and schedules that he is

submitting, and that they are true and correct to the best of his knowledge, information, and

belief.

### Defendant SCOTT H. KORN's bankruptcy schedules

24.     On or about May 2, 2014, defendant SCOTT H. KORN filed his

bankruptcy Schedules, including Schedules B and F, as well as his Declaration Concerning

Debtor's Schedules and his Statement of Financial Affairs.

25.     Schedule B, "Personal Property," requires the debtor to list "all

personal property of whatever kind."   Schedule B lists 35 separate types of property that a

debtor might own, including cash, bank accounts, "automobiles, trucks, trailers, and other

vehicles and accessories," and "boats, motors, and accessories."

26.     Schedule B instructs: "If the debtor is married, state whether the

husband, wife, both, or the marital community owns the property…."

27.     In his Schedule B, "Personal Property," in the category "Automobiles,

trucks, trailers, and other vehicles and accessories," defendant SCOTT H. KORN listed only

one vehicle: a 2000 Harley Davidson 1100 Sportster, with a value of $4,000.

28.     Defendant SCOTT H. KORN did not list the BMW or the Porsches

anywhere in any of his bankruptcy schedules filed on May 2, 2014, nor did he list any of

these three vehicles in his Statement of Financial Affairs filed on May 2, 2014.

29.     While defendant SCOTT H. KORN did not list the BMW or Porsches in his Schedule B, "Personal Property," or anywhere else, he did include among his liabilities the amount that he owed to American Express in his "Schedule F – Creditors Holding Unsecured Non-Priority Claims," there listing five accounts on which he owed a total of more than $600,000 to American Express.   That total amount included the approximately $212,529 that he owed for the purchase of the two Porsches and the BMW, but without disclosing what was purchased.

30.     Defendant SCOTT H. KORN did not list his transfer of the Cadillac on or about April 17, 2014, or his relative's subsequent purchase of the Cadillac, in his bankruptcy Schedules or in his Statement of Financial Affairs filed on or about May 2, 2014.

31.     In his Schedule B, "Personal Property," defendant SCOTT H. KORN listed two bank accounts, as follows.   He listed one account at Meridian Bank, solely in his name, with a balance of approximately $9,315.99.    (Although defendant KORN did not state the account number, Meridian account ending 5149 had a balance of approximately $9,315.99 on or about April 25, 2014.)   Defendant KORN also listed an account at Meridian Bank, owned jointly with a relative, with a balance of approximately $52,157.40.   (Although defendant KORN did not state the account number, Meridian account ending 5172 had a balance of $52,157.40 on or about April 14, 2014.)

32.     Defendant SCOTT H. KORN's Meridian account (ending 5149) was the account from which defendant KORN had withdrawn approximately $199,947 on or about April 17, 2014, to purchase the cashier's check in the amount of approximately

7

$199,937, payable to himself.   However, defendant KORN did not list his withdrawal of

approximately $199,947 from Meridian account 5149 in any of his bankruptcy schedules

filed on May 2, 2014, or in his Statement of Financial Affairs filed on May 2, 2014.

33.    Defendant SCOTT H. KORN did not list his purchase of the cashier's

check in the amount of approximately $199,937.57, or his receipt of approximately $195,938

in cash upon cashing the check at the check casher, in any of his bankruptcy schedules filed

on May 2, 2014, or in his Statement of Financial Affairs filed May 2, 2014.

34.    Defendant SCOTT H. KORN did not list his LPL Financial securities

account (ending 0478) anywhere in any of his bankruptcy schedules filed on May 2, 2014,

nor did he list this account or any transactions occurring on the account in his Statement of

Financial Affairs filed May 2, 2014.

35.    Defendant SCOTT H. KORN also omitted numerous other assets from

his bankruptcy schedules filed on or about May 2, 2014, including:

(a)    approximately $214,000 "cash on hand" that he possessed in a safe;

(b)    approximately $30,000 in tax refunds that he had received;

(c)    a large insurance payment that he had received; and

(d)    a 2007 21-foot ski boat and two wave runners that he owned.

36.    Defendant SCOTT H. KORN listed a 2012 Honda Accord on his

Schedule G (Executory Contracts and Unexpired Leases).

37.    On or about May 2, 2014, defendant SCOTT H. KORN filed a

Declaration Concerning Debtor's Schedules which stated: "I declare under penalty of perjury

that I have read the foregoing summary and schedules, consisting of <u>30</u> sheets, and that they are true and correct to the best of my knowledge, information, and belief."

38.   On or about June 3, 2014, defendant SCOTT H. KORN testified at a meeting of creditors held pursuant to 11 U.S.C. § 341.

39.   Prior to testifying, defendant SCOTT H. KORN took an oath to tell the truth:

>    Mr. Adams [representing the United States Trustee]:
>    Mr. Korn, would you raise your right hand please.
>
>    Do you solemnly swear that the testimony you will
>    provide this afternoon will be the truth and the whole
>    truth?
>
>    Mr. Korn:    Yes.

40.   During the meeting, counsel for one of the creditors asked defendant SCOTT H. KORN whether he owned any vehicles other than the 2000 Harley Davidson motorcycle that he had listed on his Schedule B (Personal Property) and the Honda Accord that he listed on Schedule G (Executory Contracts and Unexpired Leases).   Defendant KORN stated "No, I don't have any other cars":

>    Q.   I also, I also noted that on your list of property, you
>          didn't include any other cars.
>
>    A.   Excuse me?
>
>    Q.   You didn't list any other cars on the list of property.
>
>    A.   No. Why would I have any other cars on the list of
>          property?

9

Q.      I'm asking the question, do you have any other cars?

A.      No, I don't have any other cars.

Q.      The only other vehicle [i.e., other than the leased Honda] that you have is the Harley?

A.      The only other vehicle that I have is a Harley, that's correct.

## THE SCHEME

41.     From at least as early as April 2014 up to at least in or about November 2014, in the Eastern District of Pennsylvania, defendant

## SCOTT H. KORN

devised and intended to devise a scheme to defraud.

42.     It was the object of the scheme that:

43.     Defendant SCOTT H. KORN owned his cash, his bank accounts, his boats, the Porsches and the BMW, among other assets.   By omitting assets from his Schedule B and his Statement of Financial Affairs, defendant KORN would be able to avoid liquidating those assets for the benefit of his creditors.

44.     By including the debt owed to American Express for the Porsches and the BMW, defendant SCOTT H. KORN would be able to seek a discharge for some or all of the American Express debt for those cars.

It was further a part of the scheme that:

10

45.   Shortly after a jury returned a $2.4 million verdict against him, and prior to filing his bankruptcy petition, defendant SCOTT H. KORN purchased two Porsches and a BMW, charging the cars to his American Express Centurion account.

46.   Defendant SCOTT H. KORN did not list the two Porsches or the BMW on his Schedule B, filed May 2, 2014.

47.   Shortly after a jury returned a $2.4 million verdict against him, and prior to filing his bankruptcy petition, defendant SCOTT H. KORN transferred his Cadillac to a car dealer, who then sold the Cadillac to his relative.

48.   Defendant SCOTT H. KORN did not list his transfer of the Cadillac in his Statement of Financial Affairs filed on or about May 2, 2014.

49.   Shortly after a jury returned a $2.4 million verdict against him, and prior to filing his bankruptcy petition, on or about April 17, 2014, defendant SCOTT H. KORN withdrew approximately $199,947 from his Meridian account (ending 5149), purchasing a cashier's check for approximately $199,937, payable to himself.   On or about April 18, 2014, defendant KORN cashed this check at a check casher, receiving approximately $195,938 in cash.

50.   Defendant SCOTT H. KORN did not reveal his withdrawal of approximately $199,947 from his Meridian account (ending 5149), his purchase of the cashier's check for approximately $199,937, or his receipt of approximately $195,938 in cash, in any of his bankruptcy Schedules or in his Statement of Financial Affairs filed on or about May 2, 2014.

11

51.     Defendant SCOTT H. KORN omitted numerous other assets, income, and transfers from his bankruptcy Schedules and Statement of Financial Affairs filed on or about May 2, 2014.

52.     On or about May 2, 2014, in the Eastern District of Pennsylvania, for the purpose of executing and concealing this scheme and attempting to do so, defendant

**SCOTT H. KORN**

filed Schedule B – Personal Property in the bankruptcy proceeding, *In re Scott Korn, Debtor.*

In violation of Title 18, United States Code, Section 157(2).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 51 of Count One are incorporated here.

2.      On or about May 2, 2014, in the Eastern District of Pennsylvania, for

the purpose of executing and concealing this scheme and attempting to do so, defendant

### SCOTT H. KORN

filed a Statement of Financial Affairs in the bankruptcy proceeding, *In re Scott Korn, Debtor.*

In violation of Title 18, United States Code, Section 157(2).

13

## <u>COUNT THREE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

   3. Paragraphs 1 through 40, and 43 through 51, of Count One are incorporated here.

   4. On or about May 2, 2014, in the Eastern District of Pennsylvania, defendant

### SCOTT H. KORN

concealed from creditors property that he owned, that is, a BMW and two Porsches.

   In violation of Title 18, United States Code, Section 152.

14

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 40, and 43 through 51, of Count One are incorporated here.

      2.    On or about May 2, 2014, in the Eastern District of Pennsylvania, defendant

### SCOTT H. KORN

concealed from creditors property that he owned, that is, approximately $195,937 in cash.

      In violation of Title 18, United States Code, Section 152.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 40, and 43 through 51, of Count One are incorporated here.

      2.     On or about May 2, 2014, in the Eastern District of Pennsylvania, defendant

### SCOTT H. KORN

knowingly and fraudulently made a material false declaration, certificate and verification under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, *In re Scott Korn, Debtor*, Bankr. No. 14-13138, by submitting Schedules and a Statement of Financial Affairs, in which defendant KORN fraudulently omitted to disclose that he owned two Porsches and a BMW, and fraudulently omitted to disclose the transfer of his Cadillac Escalade to a car dealership, which then sold the Cadillac Escalade to defendant KORN's relative, as well as his withdrawal of approximately $199,947 from one of his accounts and conversion of that money to a cashier's check payable to himself.

      In violation of Title 18, United States Code, Section 152(3).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

3.      Paragraphs 1 through 40, and 43 through 51, of Count One are incorporated here.

5.      On or about June 3, 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### SCOTT H. KORN

knowingly and fraudulently made a false statement in a material matter and in relation to a case under Title 11 United States Code, namely, *In re: Scott Korn, Debtor,* Bankr. No. 14-13138, in that defendant KORN testified under oath at the Section 341(a) debtor's examination and stated that he did not have any cars other than a leased 2012 Honda Accord (which he had listed on Schedule G) and a 2000 Harley Davidson (which he had listed on his Schedule B), when in fact defendant KORN knew that he also owned two Porsches and a BMW.

All in violation of Title 18, United States Code, Section 152(2).

## **COUNT SEVEN**

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 1 through 40, and 43 through 51, of Count One are incorporated here.

        2.      On or about June 3, 2014, defendant

### **SCOTT H. KORN,**

having duly taken an oath, before David Adams, Esquire, an attorney with the Office of the United States Trustee, during an examination duly authorized by 11 U.S.C. §341(a) and in which Rule 2003(b)(1) of the Federal Rules of Bankruptcy Procedures authorizes an oath to be administered, that he would testify truly, did willfully and knowingly and contrary to his oath state material matter which he did not believe to be true, that is to say:

    Q.      I also, I also noted that on your list of property, you didn't include any other cars.

    A.      Excuse me?

    Q.      You didn't list any other cars on the list of property.

    A.      No. Why would I have any other cars on the list of property?

    Q.      I'm asking the question, do you have any other cars?

    A.      <u>No, I don't have any other cars.</u>

    Q.      The only other vehicle that you have is the Harley?

    A.      <u>The only other vehicle that I have is a Harley, that's correct.</u>

The underscored testimony of KORN, as he then and there well knew and believed, was false in that in or about May 2014, defendant KORN did in fact own other vehicles, specifically, a BMW and two Porsches, which he had purchased between on or about April 12, 2014 and April 15, 2014, and still owned on June 3, 2014.

All in violation of Title 18, United States Code, Section 1621.

19

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 152, set forth in this indictment, defendant

### SCOTT H. KORN

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds obtained directly or indirectly from the commission of such violations including, but not limited to, the sum of $676,491.

If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

20

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

_____

**FOREPERSON**

_____

**WILLIAM M. McSWAIN**
**United States Attorney**